NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0359n.06
Filed: May 18, 2006

No. 05-3556

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

SOLOMON CLAY,

    Defendant-Appellant.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF OHIO

—————————————————————————/

Before:    MERRITT, MARTIN, and McKEAGUE, Circuit Judges.

BOYCE F. MARTIN, JR., Circuit Judge. Solomon Clay appeals the district court's decision denying his motion to suppress evidence in a criminal case against him for felony possession of a firearm. 18 U.S.C.A. § 922(g)(1). The evidence in question was a firearm and ammunition found as a result of a *Terry* stop. For the reasons discussed within, we AFFIRM the district court's decision.

I.

All of the relevant events occurred on October 12, 2003. Youngstown Police Officer John Scott Aeppli was patrolling the south side of Youngstown, Ohio, including West Florida Street. Based on Officer Aeppli's experience, he considered the West Florida Street area to be a high crime and drug area. Upon his arrival, Aeppli observed a vehicle parked behind the house at 104 West Florida Street, which he believed to be abandoned. As he drove by the house, Aeppli saw two

individuals in the car, including Solomon Clay in the driver's seat. Aeppli testified that both passengers in the car intently watched him pass.

Aeppli decided to drive around the block in order to make a second pass of the vehicle. On his second drive by the residence, Aeppli witnessed the passengers in the car make furtive motions with their hands in the direction of the dashboard. Based on his observations of the passengers in the car and his experience and knowledge of the area, Officer Aeppli decided to approach the vehicle, and he pulled into the driveway of the residence and blocked the car from exiting.

Shanita Law, seated in the passenger seat, stated that she resided at 104 West Florida Street; however, upon Aeppli's request, Law was unable to produce identification or any other proof of her place of residence. After asking the two to exit the vehicle, Aeppli passed the driver's side of the vehicle and noticed an open box of .9mm ammunition in plain view on the driver's side floor of the car. Upon suspicion that a firearm was present in the automobile, Aeppli conducted a thorough search of the car and discovered a loaded .9mm firearm in the glove box. Aeppli then arrested Clay for mishandling a firearm in a motor vehicle, a violation of Ohio state law.

Clay was later charged with being a felon in possession of a firearm. 18 U.S.C.A. § 922(g)(1). Clay pled not guilty and, on March 15, 2004, filed a motion to suppress the firearm and ammunition seized from the vehicle. After a suppression hearing, the district court denied Clay's motion to suppress on August 9, 2004. On January 4, 2005, Clay entered a conditional plea of guilty to the charge of felon in possession of a firearm and reserved his right to challenge the denial of his motion to suppress. On March 29, Clay was sentenced to twenty-seven months incarceration. Clay filed a timely appeal to this Court on April 1.

II.

This Court reviews a district court's factual findings in a suppression hearing for clear error and the district court's conclusions of law *de novo*. *United States v. Richardson*, 385 F.3d 625, 629 (6th Cir. 2004). "The primary interests that the Fourth Amendment protects include an interest in freedom of movement and insulation from the fear and anxiety produced by unlawful seizure." *Id.*

> Under the Fourth Amendment, there are three types of permissible encounters between police and citizens: consensual encounters in which contact is initiated by a police officer without any articulable reason whatsoever and the citizen is briefly asked some questions; a temporary involuntary detention or *Terry* stop which must be predicated upon "reasonable suspicion;" and arrests which must be based on probable cause.

*United States v. Alston*, 375 F.3d 408, 411 (6th Cir. 2004) (quoting *United States v. Bueno*, 21 F.3d 120, 123 (6th Cir. 1994)). In *Terry v. Ohio*, 392 U.S. 1, 27 (1968), the Supreme Court held that officers have the authority to stop and temporarily detain citizens so long as the officer has reasonable suspicion to justify the stop. An unlawful seizure occurs when an officer, without reasonable suspicion, "by means of physical force or show of authority . . . in some way restrain[s] the liberty of a citizen." *Id.* at 19 n.16. "One's liberty is restrained when a reasonable person would not feel free to walk away and ignore the officer's requests." *Richardson*, 385 F.3d at 629 (citing *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

> According to *Terry*, a warrantless search is legal if
>
> a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger . . . And in determining whether the officer acted reasonably in such circumstances, due weight must be given . . . to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

*Id.* at 27. In *United States v. Cortez*, 449 U.S. 411, 417-18 (1981), the Court discussed *Terry*, stating

that

> [a]n investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity . . . the totality of the circumstances – the whole picture – must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.

As with any *Terry* stop, this Court must first determine when the stop took place and then decide whether, at that time, the officer had reasonable suspicion for the stop. *See Richardson*, 385 F.3d at 629-631. It is uncontested that a seizure took place at the instant when Aeppli pulled his car into the driveway of 104 West Florida Street and detained the vehicle Clay and Law were occupying.

From the moment Aeppli pulled into the driveway, this Court must evaluate the totality of the circumstances to determine whether Aeppli had reasonable suspicion to detain the vehicle at that time. *See Richardson*, 385 F.3d at 630; *see also United States v. Patterson*, 340 F.3d 368, 370-71 (6th Cir. 2003) ("At this point, the officers needed to have reasonable suspicion in order to stop the defendant"). "We view the evidence offered in support of reasonable suspicion using a common sense approach, as understood by those in the field of law enforcement." *Richardson*, 385 F.3d at 630 (citing *Cortez*, 449 U.S. at 417-18).

In support of the search, the government presents the following factors: 1) Officer Aeppli's belief that the house at 104 West Florida Street was abandoned, 2) the area was, based on Aeppli's knowledge and experience, considered a high crime area, 3) the occupants of the vehicle watched Officer Aeppli drive by, and 4) the rapid hand movements by the occupants of the vehicle. The

government attempts to add factors which came to Aeppli's attention after he had detained the vehicle, such as the presence of ammunition which the government alleges "heightened or extended the officer's previous reasonable suspicions." Any factors, however, discovered after the car was seized do not belong in the *Terry* analysis for determining whether Aeppli had reasonable suspicion in initially detaining the vehicle. *Richardson*, 385 F.3d at 630; *Patterson*, 340 F.3d at 370-71. Therefore, based on the belief that the house was abandoned, the high crime area, the fact that Clay and Law stared at Aeppli during his drive and their rapid hand movements, Aeppli had reasonable suspicion to detain the vehicle.

### III.

Upon careful review of these factors, the entire record, and the parties' briefs, we conclude that the district court correctly concluded that Officer Aeppli had sufficient reasonable suspicion that Clay was engaged in illegal conduct to justify a *Terry* stop. Accordingly, we adopt the reasoning of the district court and affirm.

**MERRITT, Circuit Judge, concurring.**  So far as I can tell from the record in this case, Officer Aeppli perhaps actually arrested Clay by pulling his police car directly in front of Clay's car with lights flashing and by ordering the occupants out.  I do not see how Clay could physically leave.  Such an action by the officer would be an arrest requiring "probable cause," not just "reasonable suspicion."  But that issue was not raised on appeal and apparently not in the district court either.  So it is not before us.  Since the standard is only reasonable suspicion, I agree with the Court that the officer had a reasonable basis for further inquiry.